—————

No. 95-3309

—————

Candace J. Wilson,                    *
                                      *
        Appellant,                    *
                                      *  Appeal from the United States
    v.                                *  District Court for the
                                      *  Eastern District of Missouri.
The Prudential Insurance              *
Company, of America,                  *
                                      *
        Appellee.                     *


—————

        Submitted:  February 16, 1996

          Filed:  September 27, 1996
—————

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

—————

MAGILL, Circuit Judge.

     This appeal requires us to interpret the language of a benefit exclusion clause of an Employee Retirement Income Security Act (ERISA) plan.  See 29 U.S.C. §§ 1001-1461 (1994).  Candace Wilson was paralyzed as a result of injuries incurred while working as an agricultural laborer for Midway Dairy Farms II (Midway) and sought insurance coverage for her medical bills from a health benefits plan (the Plan) provided by The Prudential Insurance Company (Prudential).  Prudential denied medical benefits to Wilson on the ground that the Plan excludes benefits for work related injuries.

Wilson sued and the district court[1] granted summary judgment to Prudential. We affirm.

## I.

Wilson was employed as a laborer on a dairy farm run by Midway. Midway purchased a group medical insurance policy from Prudential. The policy constituted an employee benefit plan within the meaning of ERISA, and Wilson was a participant in the Plan.

On August 22, 1994, Wilson was struck by a cow while working at the dairy farm. She was immediately taken to a hospital in Cape Girardeau, Missouri, and shortly thereafter she was transferred to St. Louis University Medical Center in St. Louis, Missouri. After receiving immediate treatment, she was transferred to St. John's Mercy Hospital for rehabilitation. Despite all of the medical care given, Wilson now has complete paraplegia.

As a result of the accident and treatment, Wilson has incurred substantial medical costs. She submitted these bills to Prudential for payment under the Plan. However, Prudential denied these claims, declaring that under the Plan no benefits are payable for work related injuries. See Letter Denying Benefits (Sept. 8, 1994), reprinted in J.A. at A168. Wilson requested reconsideration of this decision and Prudential upheld its earlier denial of benefits. See Letter Denying Benefits (Nov. 16, 1994), reprinted in J.A. at A249-50.

In denying Wilson medical benefits, Prudential relied on a Plan provision excluding coverage for work connected injury or disease charges. This provision states that there will be no

---

[1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri, adopting the review and recommendation of the Honorable William S. Bahn, United States Magistrate Judge for the Eastern District of Missouri.

coverage for:

> A charge in connection with injury or disease that is eligible under any workers' compensation law, occupational disease law or similar law. This applies if you could be covered under such laws. But if you are a partner, proprietor or corporate executive officer of the Employer, this (1) applies only if you are covered.

See J.A. at A85.

Under Missouri law, employers of agricultural labor such as Midway are exempted from the workers' compensation law's requirement that employers furnish compensation to employees injured in the course of employment. See Mo. Rev. Stat. §§ 287.090(1), 287.120 (1993). However, such employers may elect to come under the workers' compensation provisions by either (1) filing a notice of election with the Division of Worker's Compensation of the State of Missouri, or (2) purchasing a valid compensation insurance policy. See Mo. Rev. Stat. § 287.090(2) (1993).

Midway never exercised either of these options, and thus Wilson's injuries were not covered by the workers' compensation laws. Prudential denied her claims under the provision quoted above because her injuries could have been covered by workers' compensation if her employer had elected to come within the workers' compensation provisions.

In January 1995, Wilson filed suit in the Circuit Court of Cape Girardeau, Missouri, contending that: (1) Prudential was responsible for the medical bills arising out of the August 22 accident; (2) Prudential's refusal to pay the claims amounted to a breach of fiduciary duty; and (3) Prudential's refusal to pay the claims was vexatious. Because this cause of action is preempted by ERISA, Prudential removed the case to the federal district court in

February 1995. After removal, Wilson added a fourth count to the suit--that Prudential should be equitably estopped from denying her medical benefits because it had paid such benefits to other claimants in similar situations. See Second Am. Compl. (May 5, 1995), reprinted in J.A. at A169-76.

Before Wilson filed her second amended complaint, Prudential moved for summary judgment, contending that, as to the first two counts, the Plan exclusion was not ambiguous and that Wilson's injuries were not covered by the Plan. Prudential further noted that Wilson's claim for vexatious refusal to pay was preempted by ERISA.

The district court granted summary judgment to Prudential on all four counts. Reviewing Prudential's denial of benefits de novo, the district court concluded that the exclusion provision was not ambiguous and that it clearly operated to deny Wilson benefits. The court further concluded that neither the vexatious refusal to pay claim nor the equitable estoppel claim were viable. Wilson appeals the ruling as to Count I and Count IV of her second amended complaint, contending that (1) her medical injuries are covered by the Plan, and (2) Prudential should be estopped from claiming that the exclusion applies.

## II.

When reviewing a plan administrator's decision to deny benefits to a claimant, "a reviewing court should apply a de novo standard of review unless the plan gives the 'administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Wilson asserts, and Prudential does not dispute, that the Plan does not vest discretionary interpretive authority in Prudential. We therefore

review the denial of benefits de novo.

In interpreting ERISA plans, the plainly stated terms "should be accorded their ordinary, and not specialized, meanings." Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 154 (8th Cir. 1990), cert. denied, 501 U.S. 1238 (1991). We must construe each provision consistently with the others and as part of an integrated whole so as to render none of them nugatory and to avoid illusory promises. A contract is ambiguous when it is reasonably susceptible to more than one interpretation. See Ehrhardt v. Penn Mut. Life Ins. Co., 902 F.2d 664, 667 (8th Cir.), cert. denied, 498 U.S. 855 (1990). After carefully reviewing the benefit exemption at issue, we conclude that it is not ambiguous and that it excludes Wilson's workplace injuries from coverage.

Under its terms, the Plan exclusion denies benefits to those who could be covered by Missouri workers' compensation law and who suffer a workplace injury or disease. The exclusion is best understood when each of its three sentences is explained separately.

The first sentence states that benefits exclusion applies to "[a] charge in connection with injury or disease that is eligible under any workers' compensation law, occupation disease law or similar law." J.A. at A85. This sets the first condition of the exclusion--the injury or illness must be of the type covered by workers' compensation. Significantly, the sentence does not state that the claimant must be covered by workers' compensation herself. Indeed, it makes no mention of the status of the claimant, but rather only the nature of the claimant's injury. Because Wilson incurred her injury in the course of her employment at Midway, an injury within the scope of workers' compensation coverage, she satisfies the first exclusion requirement.

The second sentence imposes the second condition of the

exclusion, stating that "[t]his applies if you could be covered under such laws." Id. "This" is synonymous with "exclusion." It clarifies that any Plan claimant who is covered by workers' compensation, or is not covered by workers' compensation but could be, will be subject to the exclusion. While Missouri law clearly excludes agricultural employers from mandatory participation in the workers' compensation program, it also gives employers an opportunity to opt into the program by either filing notice of acceptance of the provision or by purchasing a valid compensation insurance policy. Because Midway had this option, Wilson could have been covered by workers' compensation even though she was not.

The third, and final, sentence exists to modify the second. It limits the effect of the exclusion for a specific subset of Plan holders by stating, "But if you are a partner, proprietor or corporate executive officer of the Employer, this (1) applies only if you are covered." Id. In other words, for most classes of Plan holders, the fact that they could be covered by workers' compensation is enough to satisfy the terms of the exclusion. For partners, proprietors, and corporate executives, however, they must in fact be covered. Significantly, this third sentence can be tied to Mo. Rev. Stat. § 287.035 (1994), which allows partners, copartners, and sole proprietors to receive workers' compensation benefits only when they have individually elected to procure insurance policy protection. While agricultural employers and partners, copartners, and proprietors have a similar opt-out status with respect to Missouri's workers' compensation law, the Plan's benefits exclusion makes specific accommodation of this in-between status only with respect to the latter.

Wilson offers an alternative interpretation of the exclusion. According to Wilson, the Plan exclusion refers only to individuals who are actually within the coverage of Missouri's workers' compensation scheme. Wilson believes this exclusion is intended to encourage individuals who participate in the Plan and workers'

-6-

compensation and who suffer an injury covered by both to claim the workers' compensation benefits. As an example, Wilson suggests that an employee who fails to file a workers' compensation claim within the applicable time period, see Mo. Rev. Stat. § 287.430 (1994), or an employee who fails to report an injury to his employer in thirty days absent special circumstances, see Mo. Rev. Stat. § 287.430 (1994), falls squarely into Prudential's exclusion because their injury could have been covered by workers' compensation, but was not due only to inaction on the claimant's part.

This interpretation cannot accommodate the exclusion's third sentence, however. In the third sentence, the exclusion singles out a class of people who have an opt-in status with workers' compensation and states that they must exercise that option in order for the exclusion to apply. This sentence clearly concerns the status of an individual vis-a-vis workers' compensation. This fact makes Wilson's contention that the exclusion deals with the status of an injury vis-a-vis workers' compensation untenable.[2]

**III.**

Because Midway's health benefits plan is unambiguous in excluding agricultural workers from receiving medical coverage for workplace injuries, we affirm the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Under the plain language of its Plan, Prudential must provide Wilson with relief for her injuries. The

---

[2]Because the Plan exclusion is not ambiguous, we do not reach Wilson's equitable estoppel argument. See Slice v. Sons of Norway, 34 F.3d 630, 634 (8th Cir. 1994) ("Estoppel can only be employed when the terms of the plan are ambiguous and the communications constitute an interpretation of that ambiguity.").

injuries do not fall under the Plan's exclusion because they were not "eligible for coverage" under any other compensation law and Wilson <u>could</u> <u>not</u> be covered under those laws.

Missouri law specifically excludes agricultural employers from mandatory participation in its workers' compensation program. Accordingly, because Midway did not voluntarily accept workers' compensation liability, its employees' injuries were not eligible for coverage. Moreover, Midway's decision prevented Wilson from being able to obtain workers' compensation coverage: there was nothing in her power that she could do to ensure coverage. The Plan's exclusion should apply only to those workers who, through their own inaction, failed to take the necessary steps to procure compensation for their injuries. Thus, I would reverse the district court's order and grant Wilson the compensation to which she is entitled.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.